IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**BRIAN K. BOYD,**

    **Plaintiff,**

**vs.**                                                                                          **CASE NO. 1:05CV125-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) filed under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be reversed and this cause remanded for further proceedings as set forth below.

**A.**     **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on March 30, 2001, and for SSI on November 21, 2000, alleging a disability onset date of October 15, 1998, because of chronic pain in his right elbow, knee and ankle, as well as depression. Plaintiff petitioned for a

hearing before an administrative law judge (ALJ), who conducted a hearing on March 11, 2004, and entered an unfavorable decision on August 16, 2004. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B.     FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had chronic pain in the right elbow, knee and ankle, as well as depression, and that these impairments were severe within the meaning of the Act. (R. 23). The ALJ further found that Plaintiff's impairments, either alone or in combination, did not meet any of the listings. (R. 23). The ALJ found that Plaintiff had mild restrictions in his daily activities and social functioning and moderate limitations in his abilities to maintain concentration, persistence and pace, but had not experienced any repeated episodes of decompensation as a result of his mental impairment of depression. (R. 24). After consideration of the medical record and Plaintiff's allegations of pain, the ALJ found him capable of sedentary work: he can lift no more than 10 pounds; sit for up to 6 hours, with 5 minute breaks every hour; stand/walk up to 20 minutes at a time for up to 2 hours a day; can occasionally climb ramps or stairs, balance, stoop, he can never climb ladders, ropes or scaffolds, crouch or crawl or kneel, cannot operate foot controls with his lower right extremity; and he should avoid concentrated exposure to vibration or hazards. (R. 25).

In making his assessments, the ALJ gave great weight to the reports of Plaintiff's treating physicians, Drs. Lovett and Hunter. (R. 27). He has also given great weight to examining physician, Dr. Valenstein, and moderate weight to the report of Dr. Greenberg. (R. 27). He rejected the report of Dr. Pino as internally inconsistent and

**No. 1:02CV125-SPM/AK**

inconsistent with the report of Dr. Valenstein, and that Pino's assessment of a GAF score of 41, indicating a major mental impairment, was inconsistent with his overall assessment of a moderate mood disorder. (R. 28). In Dr. Pino's RFC, he also found mostly mild limitations, which also conflicts with a moderate mood disorder. (R. 28). Dr. Valenstein also found Plaintiff to have a moderate mood disorder in her report on May, 4, 2004. (R. 28). The ALJ found Plaintiff's demeanor at the hearing to be good, but that he was credible as to his level of pain and functional limitations only to the extent the ALJ found them to be. (R. 30). Plaintiff was unable to perform his past relevant work, but the vocational expert testified that Plaintiff could perform work as a painter-clock/handlers; band attacher; crystal attacher; or telephone solicitor, and that these jobs exist in significant numbers in the national economy, and Plaintiff is therefore not disabled. (R. 33-34).

**C.     ISSUES PRESENTED**

Plaintiff argues that the ALJ ignored the vocational expert's testimony that he would be precluded from any employment if all of his severe impairments were included in the hypothetical, specifically the mental limitations found by Dr. Pino.

The government responds that the ALJ articulated his reasons for giving less weight to the opinion of Dr. Pino which he found to be internally inconsistent and inconsistent with the record as a whole. Further, even though the ALJ adopted the severity finding of Dr. Valenstein, but did not include this finding in his hypothetical to

the VE, this constituted harmless error at best and should not warrant remand because inclusion of this factor would not have altered the result.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

### D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the

Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairment?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

**No. 1:02CV125-SPM/AK**

  4. Does the individual have any impairments which prevent past relevant work?

  5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

According to treatment summaries, Plaintiff was injured at work in 1996 when he was a custodial maintenance worker at the University of Florida and a student ran through a steel door pushing it into his knee. There are no workers compensation treatment notes describing the initial injury and first surgeries, this summary is obtained from his reports to later treating sources.

**No. 1:02CV125-SPM/AK**

Treatment notes for Plaintiff's knee injury show that Dr. Timothy Lane began treating him in December 1999, and performed surgery upon him. He released Plaintiff to work on June 22, 2000, finding maximum medical improvement with range of motion identical to the left knee. (R. 218-219). Dr. Lane assessed him at 25% impairment to the right leg with a 10% overall impairment rating, and he released him to do a sitting job with no surgery planned in the future, with use of "occasional pain medication" and possibly anti-inflammatory medication. (R. 216). In March 2001, Plaintiff reported continued pain and a MRI revealed subtle changes in the area, no tears, and nothing Dr. Lane believed required "a new intervention." (R. 214).

Surgery treatment notes from a right radial tunnel release for elbow pain on August 13, 2001, (R186-209) show some relief in the area following surgery. (R. 210). Apparently he had these problems for some time and had nerve conduction studies previously with no evidence of entrapment. (R. 253-253). Later studies in February 2000, revealed the need for surgery. (R. 249-250).

Additional notes from Dr. Lane show that on February 7, 2002, a MRI of the right elbow was "entirely normal," and he had achieved maximum medical improvement for his right upper extremity with a permanent impairment rating of 3% and released to light duty with maximum lifting of 25 pounds, no overhead work and no ladders. He was still not released to work because of his knee. (R. 338). X-rays of the knee taken on July 9, 2002, show "some progressive medical compartment osteoarthritis, with no instability, and range of motion from 5 to 110 degrees. (R. 338). By March 2003, the x-rays

**No. 1:02CV125-SPM/AK**

showed "worsening medial compartment osteoarthritis (R. 337) and by October 2003, it was determined to be "moderate arthritis." (R. 336).

Dr. Oregon Hunter performed a comprehensive evaluation on January 2, 2001, and found Plaintiff to be suffering from right knee and right elbow pain, but initially thought no surgery should be performed on the elbow and only "palliative treatment of the knee" was appropriate. (R. 244). He found that Plaintiff should avoid prolonged walking or standing and avoid crawling, squatting, and climbing. (R. 244). Additional notes show that he never really resolved his right knee pain and sought treatment via pain medication and physical therapy, which Dr. Hunter prescribed. (R. 400-434). He also participated in a home exercise program. (R. 428). He alternated using a knee brace and a cane for assistance in ambulating.

Plaintiff has participated in a great deal of physical therapy for his knee, heel, hip and elbow. (R. 161-167, 177-185).

A consultative examination was performed by Dr. Robert Greenberg on July 14, 2003, and he found Plaintiff to have full range of motion, but atrophy of the right calf and thigh. He attributed this to osteoarthritis of the right knee and right elbow from previous injuries and found him to be able to perform work related activities, except requiring prolonged standing or bending. (R. 268-269). A Medical Source Statement prepared by Dr. Greenberg dated July 11, 2003, affirmed these findings, adding only some limitation in upper extremities precluding pushing and pulling because of the right elbow. (R. 272-273). Dr. Greenberg prepared a RFC dated March 8, 2004, which assessed

**No. 1:02CV125-SPM/AK**

him at sitting 3 to 4 hours at a time; up to 8 hours a day, five days a week with a five minute stretch break every hour; standing 30 minutes at a time, up to 2 hours a day, five days a week, and sitting or standing at will 3 to 4 hours a day; lifting 1 to 5 pounds frequently due to right elbow pain and atrophy of right calf and thigh, and pain on ROM of right knee. (R. 354-357). Dr. Greenberg also prepared a pain assessment that found Plaintiff to be reporting continuous, chronic pain expected from someone with his diagnosis and he would rate this degree of pain as "marked." (R. 358-363). Dr. Greenberg did not note that he suffered from depression or took medication for depression. (R. 360). He also found that the levels of pain would mildly restrict Plaintiff in his ability to maintain attention and concentration and to perform activities within a schedule, but that it would restrict him in the extreme from being able to complete a normal work week. (R. 362).

Work Status Notes from November 3, 2003, show no change and no work release for problems associated with his right knee. (R. 364, 366, 367).

Plaintiff sought treatment in November 2001, for his heel pain, which he attributed to uneven weight distribution because of his right knee problems. (R. 298). X-rays confirmed mild plantar fasciitis. (R. 298) He received some relief from orthotics (R. 296), but not a good result from a cortisone injection (R. 294). In March 2003, an MRI was taken to rule out any growths, and it confirmed mild plantar fasciitis. (R. 285, 300). In April 2003, Plaintiff elected to have surgery to remove a heel spur seen on x-ray. (R. 283). Apparently he had surgery in August 2003, and in his first post-operative

**No. 1:02CV125-SPM/AK**

visit after surgery the x-ray "shows an excellent reduction of the...spur." (R. 278). Six months post-operative found him to be 70% better than before the surgery. (R. 274).

Counseling notes from Dr. Lovett and Grant McDougall show Plaintiff sought treatment in May 2002 for anger management and emotional response issues relating to his physical limitations, including pain. (R. 301-334).

His first visit to psychiatrist, Dr. Ramon Pino, was on August 8, 2002, for problems associated with chronic pain. (R. 346-353). Dr. Pino noted depression during the interview and diagnosed him with Major Depressive Type, recurrent, moderate, that developed in response to medical illness, resulting in a GAF score of 41 or "moderate functional impairment." (R. 350-351). Dr. Pino gave him no psychiatric restrictions preventing him from working, but concluded that he would not reach MMI for psychiatric problems until 6 months. (R. 351). His prognosis was poor and guarded because patients with long term pain were not expected to have the best outcome. (R. 352). He prescribed an anti-depressant and an anti-anxiety medication with continued psychotherapy. (R. 352). There were several visits over the next year and a half, with continued medication prescribed, and no noted changes in his complaints. (R. 341-345). Dr. Pino prepared a Mental Residual Functional Capacity Assessment on March 9, 2004, finding Plaintiff mildly limited in all areas, except the ability to maintain attention and concentration, the ability to perform tasks within a schedule, the ability to work in coordination with others, the ability to complete a normal work day, the ability to interact

**No. 1:02CV125-SPM/AK**

with the public, the ability to get along with peers, and the ability to travel in unfamiliar places, which Dr. Pino found Plaintiff to be moderately impaired. (R. 435-437).

Dr. Valenstein conducted a consultative examination on May 4, 2004, (after the hearing) and found Plaintiff to have average attention and concentration skills, and to be suffering from Major Depressive disorder, with a GAF score of 65. (R. 438-441). She completed a Supplemental Questionnaire and found Plaintiff to have moderate difficulties in only 3 categories: understanding and carrying out detailed instructions because of his reported ninth grade education and difficulty in responding appropriately to work pressures because of his level of depression. (R. 438-441).

In a Residual Functional Capacity dated May 17, 2001, with treating source statements available to the reviewing physician, it was found that Plaintiff's symptoms were based on a medically determinable impairment, but the severity was disproportionate to that impairment and Plaintiff was capable of sedentary work. (R. 169-176).

Another Residual Functional Capacity dated September 28, 2001, has similar findings with restrictions to climbing, balancing, stooping, kneeling, crouching, and crawling (r. 262) much like Dr. Hunter found earlier. (See R. 244).

F.  **SUMMARY OF THE ADMINISTRATIVE HEARING (held March 11, 2004)**

Plaintiff was represented by present counsel at the hearing. (R. 468). He was 41 years old at the hearing. (R. 468). He was first injured in October 1996 in an on-the-job accident when he was hit in the knee with a four inch steel door. (R. 469). **He was**

**No. 1:02CV125-SPM/AK**

**awarded permanent disability from the state as a result.** (R. 470). He has had five surgeries since then. (R. 470). He alleges that his pain is localized in his knee, heel, and right elbow. (R. 472). His other problems are anxiety and hypertension. (R. 472). Dr. Pino prescribes Celexa to help with the anxiety and Grant McDougal is his counselor, who helps him cope with the limitations caused by his pain. (R. 473). He uses a driving device, prescribed by Dr. Hunter, so that he can use his left foot to brake and accelerate. (R. 474). He sits with his leg propped up three to four hours a day. (R. 477). He would need to get up every 30 to 45 minutes for 20 minutes to stretch if he had a job sitting down. (R. 481). He also ices his knee twice a day. (R. 483). He can only stand 5 minutes at a time without his cane, 10 t0 15 minutes with his cane. (R. 484). He can walk two blocks without the cane, maybe three blocks with it. (R. 485). The pain in his elbow affects his ability to carry more than 5 pounds, grip, and twist like in opening a drink can. (R. 487). He receives $517. 00 every two weeks from workers compensation. (R. 491).

      The first hypothetical posed to the vocational expert was an individual capable of sitting up to 8 hours a day with a five minute stretch break per hour, on his feet two hours a day, no more than 20 minutes at a time, lifting up to 10 pounds, no use of foot controls (right), no crawling, no climbing, no crouching, no kneeling, and the VE said his past relevant work would be precluded, but that numerous other jobs in the national economy could be performed. (R. 495-496). The ALJ then added mental limitations found by Dr. Pino on March 9, 2004, and the VE said all jobs would be precluded. (R.

**No. 1:02CV125-SPM/AK**

497-498).  The ALJ then posed the limitations found by Dr. Pino on August 8, 2002, which did not include any psychiatric restrictions despite a GAF score of 41, which means severe mental illness including psychosis.  (R. 498-499).  The ALJ sees this as a serious inconsistency since Plaintiff was being treated for depression.  (R. 499-500). The ALJ suggests that he will obtain a psychiatric consultative examination or some explanation from Dr. Pino.  (R. 501).  The attorney points out that Dr. Greenberg basically corroborated Dr. Pino's finding that Plaintiff would be expected to have marked pain affecting his daily living and the ability to complete a normal work day.  (R. 502). [Apparently, the ALJ obtained a psychological CE from Dr. Valenstein after the hearing.]

## G.  DISCUSSION

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy.  20 C.F.R. § 404.1520(a)(4).  The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert.  Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).  The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).  See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995).  "It is only when the claimant can clearly do

**No. 1:02CV125-SPM/AK**

unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).  Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.  <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  <u>Phillips</u>, 357 F.3d at 1240.  In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments.  <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999).  The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985).

The ALJ found the following impairments to be severe within the meaning of the Act: "chronic pain in the right elbow, knee and right ankle, as well as depression resulting from his physical impairments."  (R. 23).  Drs. Greenberg and Pino found that Plaintiff's level of pain affected his ability to concentrate and to complete a normal work week and work day schedule, and Plaintiff's attorney asked that Dr. Valenstein address the issue and complete a questionnaire to this effect (R. 445), but there is nothing from her in the record about this.  Although the ALJ explains why he is not crediting Dr. Pino's report with any significant weight, he does not explain why he is only crediting Dr.

**No. 1:02CV125-SPM/AK**

Greenberg's report with "moderate weight" nor does he explain what part of Dr. Greenberg's report he does not find credible. (R. 27). None of Dr. Valenstein's findings were included in the hypothetical or otherwise provided to the vocational expert for consideration since she had not examined Plaintiff prior to the hearing. In other words, the hypothetical to the vocational expert should have included "chronic pain" and "depression" and the limitations imposed by both impairments for consideration by the expert since the ALJ found them to be severe. Except for a requirement of a "five minute stretch break," no other effects of chronic pain were considered and **no** effects of Plaintiff's depression were considered.

The Commissioner contends that the failure by the ALJ to include any of the limitations found by Dr. Valenstein in the hypothetical to the expert constitutes harmless error. An error by the ALJ will be held harmless if the evidence is strong enough to support the outcome despite the lapse. Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983). Since the ALJ did not adequately articulate why he found Dr. Greenberg's findings about the effects of Plaintiff's pain level suspect and did not pose any of Dr. Valenstein's findings to the expert, the undersigned is of the opinion that there are two doctor's opinions varying from moderate (Valenstein) to extreme (Greenberg), but both expressing significant limitations upon Plaintiff's ability to work that would **likely** affect the outcome. Thus, this case should be remanded for inclusion in the hypothetical those limitations due to chronic pain as described by Dr. Greenberg, unless the ALJ can articulate a reason not

**No. 1:02CV125-SPM/AK**

to credit his opinion, and the limitations due to his depression as expressed by Dr. Valenstein.

Further, the ALJ found that the "claimant's demeanor as a witness at [the] hearing was good," but he concluded that his allegations of pain and limitation were not fully credible because "[n[either the objective medical evidence nor the claimant's subjective allegations warrants any more restrictive functional limitations than those which I have found in this case." (R. 30). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

All of Plaintiff's treating physicians acknowledged that the underlying condition supported the degree of pain Plaintiff was reporting, no one suggested that he was malingering, and Plaintiff underwent a number of procedures, long courses of physical therapy, and other therapy regimens suggesting a willingness and motivation to achieve some relief. The ALJ did not refer to any specific reason for not accepting Plaintiff's testimony as true, such as conflicting reports of daily activities, failing to cooperate in a treatment regimen or using only over the counter pain medication, and more specific reasons for discrediting his pain testimony should be provided upon remand, if the ALJ continues to take this position.

**No. 1:02CV125-SPM/AK**

Finally, there are no records of the workers compensation findings, medical records subsequent to the initial accident involving his right knee, nor any records of the five surgeries on Plaintiff's right knee.  These should be obtained upon remand to provide a clearer picture of the history of this condition and perhaps aid the ALJ in assessing the seriousness of the current condition.  While the findings of disability by another agency are not binding on the Commissioner because the definitions of disability from one agency to another often differ,  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1241 (11th Cir. 1983),  any disability determinations by the Florida Workers Compensation Agency must be accorded great weight in social security disability determinations.  <u>Falcon v. Heckler</u>, 732 F.2d 827, 831 (11th Cir. 1984).  The ALJ should have benefit of these records and accord them great weight in making his determination.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED**, and this cause **REMANDED** for the reasons set forth above.

At Gainesville, Florida, this  **6**<sup>th</sup>  day of November, 2006.

                                s/ A. KORNBLUM
                                **ALLAN KORNBLUM**
                                **UNITED STATES MAGISTRATE JUDGE**

**No. 1:02CV125-SPM/AK**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:02CV125-SPM/AK**